**AL NAWASI TRADING COMPANY; Lasmo Exploration (Middle East) Limited; and Khaleej Petroleum Company, Plaintiffs,**

v.

**BP AMOCO CORPORATION; and Amoco Overseas Exploration Company, Defendants.**

No. 00 Civ. 708 JSR.

United States District Court, S.D. New York.

Feb. 14, 2000.

---

**58**

Jonathan D. Schiller, Washington, DC, Paul D. Friedland, New York, for plaintiff.

John A. Donovan, Jay S. Burke, for Defendant.

### MEMORANDUM ORDER

RAKOFF, District Judge.

On February 1, 2000, plaintiffs Al Nawasi Trading Company ("Al Nawasi"), LASMO Exploration (Middle East) Limited ("LAS-MO"), and Khaleej Petroleum Company ("Khaleej") commenced this action, seeking to enjoin defendants BP Amoco Corporation ("BP Amoco") and Amoco Overseas Exploration Company ("Amoco Overseas") from excluding them (until the matter can be resolved by arbitration) from contracted-for participation in a consortium that expects to bid on a valuable oil exploration contract with the Government of Kuwait. On February 2, 2000, plaintiffs applied for expedited discovery in aid of a prospective motion for a preliminary injunction. For the reasons set forth below, plaintiffs' application is denied.

The underlying dispute derives from conflicting interpretations of various contracts among various of the parties, in particular an Area of Mutual Interest Agreement (the "AMI Agreement"), dated November 22, 1997, by which certain of the parties agreed to cooperate in bidding for exploration, development, and production of the oil fields in northern Kuwait (the "North Field Project"). Plaintiffs allege, in effect, that they are being "squeezed out" of the full measure of their promised participation in the joint venture, in favor of other oil companies—Exxon and Phillips—with which defendants have been secretly negotiating. Plaintiffs therefore seek expedited discovery relating to communications among defendants and Exxon, Phillips, and/or the Kuwait Government concerning either defendants' contractual agreements with plaintiffs or the North Field Project. *See, e.g.,* Friedland Decl., Ex. 1.

On inspection, however, this entire action appears to be simply an end-run around plaintiffs' admitted obligation under the AMI Agreement to submit such contractual disputes to the exclusive determination of the London Court of International Arbitration (the "LCIA"). Indeed, on December 10, 1999, plaintiffs filed a request for arbitration of their disputes with the LCIA. While plaintiffs allege that recourse must still be had to this Court to "preserve the status quo" until the LCIA can act, *see Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 1049, 1053–54 (2d Cir.1990), an Arbitral Tribunal appointed by the LCIA can itself order expedited discovery and the functional equivalent of preliminary injunctions. *See* LCIA Articles 15, 20, 22, and 25. Yet, rather than seeking expedited appointment of the Arbitral Tribunal under LCIA Article 9.1 so that such emergency relief can be sought, plaintiffs have, if anything, acquiesced in delays in the arbitration proceedings so that they might instead seek such relief from the Court. *See, e.g.,* Letter from Jonathan Schiller, Esq. to Adrian Winstanley dated December 23, 1999 (plaintiffs' counsel agreeing to 30–day extension of defendants' time to answer plaintiffs' notice of arbitration but reserving plaintiffs' "right to seek interim relief from a court of competent jurisdiction"). In the circumstances, this is tantamount to a tactical evasion of plaintiffs' contractual submission to the authority of the LCIA and by itself warrants this Court

in exercising its discretion to deny plaintiffs' application.

To put it succinctly, it is one thing to apply to a court to preserve the status quo until a duly constituted arbitrator can act; but it is quite another thing to consciously avoid taking steps that would give the arbitrator the ability to act and, instead to apply to another court for relief. Given the modern preference for international arbitration, such bootstraps are no longer fashionable.

Independently, moreover, the application must fail for the additional reason that defendants have not even provided a colorable basis for supposing that the requested discovery will unearth evidence that plaintiffs will suffer irreparable harm if preliminary relief is not granted—such harm being a necessary condition to any preliminary injunctive relief they might seek on the basis of the requested discovery. While plaintiffs allege that they will be irreparably harmed if they are excluded from meaningful participation in the bidding process for the North Field Project in even its early phases, they provide no competent evidence whatever that such a phase is imminent or that the requested discovery is likely to show as much.

For example, plaintiffs rely heavily on a letter from Dr. Gerald J. Laving, BP Amoco's manager in Kuwait, dated January 19, 2000, to Dr. Peter R.A. Wells, LASMO's director, which reports that the Government of Kuwait has set a tentative schedule for the bidding process on the North Field Project. *See* Wells Decl., Ex. 6. But the letter, which relates several layers of hearsay ultimately tracing back to a rumor "gleaned" from the British Embassy in Kuwait, lacks any indicia of reliability. Moreover, plaintiffs offer no evidence whatever that the first two steps outlined in the reported schedule—the setting of criteria for selection of international oil companies and the issuing of the initial process protocol that defines process conditions—have in fact taken place, despite the fact that according to the letter both were supposed to have been completed by mid-January 2000. In contrast, defendants not only vigorously deny that any such events have remotely occurred but also adduce evidence that the numerous complexities surrounding the North Field Project will take many months, if not years, to resolve before the bidding process can even begin. *See, e.g.,* Decl. of Dr. Gerald J. Laving ¶ 16. Overall, upon review of the entire record, the Court finds no material evidence whatever that the requested discovery (which, despite plaintiffs' disclaimers, is both broad and intrusive) is likely to lead to proof that the start of the bidding process is "likely and imminent," as opposed to "remote and speculative." *See, e.g., Lentjes Bischoff GmbH v. Joy Envtl. Techs., Inc.,* 986 F.Supp. 183, 187 (S.D.N.Y.1997); *see also In re Holly Farms Corp. Shareholders Litig.,* 564 A.2d 342, 349–50 (Del.Ch.1989).

Accordingly, for each of the foregoing reasons, plaintiffs' motion for expedited discovery is hereby denied.

SO ORDERED.