**CHINA NATIONAL METAL PRODUCTS IMPORT/EXPORT COMPANY, Plaintiff,**

v.

**APEX DIGITAL, INC., Defendant.**

**No. EDCV 01–130 RT (SGLx).**

United States District Court, C.D. California.

June 13, 2001.

Jeffrey S. Gordon, Julian Brew, Kaye Scholer LLP, Los Angeles, CA, for Plaintiff.

Kenneth R. O'Rourke, Michael M. Maddigan, Allice R. Cooper, O'Melveny and Myers, Los Angeles, CA, for Defendant.

ORDER 1) GRANTING DEFENDANT APEX DIGITAL, INC.'S MOTION FOR REVIEW AND RECONSIDERATION OF THE UNITED STATE MAGISTRATE JUDGE' ORDER GRANTING PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT; 2) SETTING ASIDE THE ORDER GRANTING PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT; 3) REFERRING THE CLAIMS IN THIS ACTION TO ARBITRATION; 4)GRANTING DEFENDANT APEX DIGITAL, INC.'S MOTION TO DISMISS; 5) DENYING DEFENDANT APEX DIGITAL, INC.'S REQUEST FOR A STAY; AND 6) DENYING APEX DIGITAL, INC.'S REQUEST FOR IMMEDIATE CERTIFICATION.

TIMLIN, District Judge.

The court, Judge Robert J. Timlin, has read and considered defendant Apex Digital, Inc. ("Apex")'s 1) motion for review and reconsideration of the United States magistrate ("magistrate judge")'s order granting plaintiff's application for a right to attach order and issuance of a writ of attachment ("writ of attachment") and 2) request for a stay of the attachment or stay of the enforcement of the attachment ("request for stay"), or in the alternative request for immediate certification for appeal ("request for immediate certification"), plaintiff China National Metal Products Import/Export Company ("China National")'s opposition, and Apex's reply.

The court has also read and considered Apex's motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6) ("Rule 12(b)(1)" and "Rule 12(b)(6)" respectively) or in the alternative, to stay the action, China National's opposition, and Apex's reply. Based on such consideration, the court concludes as follows:

## I.

### BACKGROUND [1]

Apex is a California corporation with its principal place of business in Ontario, California. Apex imports consumer electronic goods, such as televisions and DVD players, which it sells under its own brand name to retailers such as Circuit City, K-Mart, and Best Buy.

China National is a corporation organized under the laws of, and doing business in, the People's Republic of China ("China"). Chinese companies are permitted to import and export goods only if they have a Chinese government license granting them foreign trade rights. China National has been granted such rights and makes its principal business facilitating trade between Chinese and foreign companies.

In early 2000, Apex became interested in purchasing DVD players manufactured by Jiangsu Shinco Electronic Group Company ("Shinco"). Shinco does not have foreign trading rights, so Apex and China National reached an agreement whereby China National would purchase DVD players from Shinco and then export those DVD players to Apex.

Between July and September 2000, China National and Apex entered into a series of written contracts in which Apex agreed to purchase AD–703 and AD–500A model DVD players from China National (the "Contracts").[2] The Contracts specify the number of DVD players ordered and the price for each DVD player. Paragraph 15 of each of the contracts provides:

Arbitration: All disputes from or in connection with this Contract shall be submitted to the China International Economic and Trade Arbitration Commission ["CIETAC"] for arbitration which shall be conducted by the Commission in Beijing or by its Shenzhen Sub-Commission in Shenzhen or by its Shanghai Sub-Commission in Shanghai at the Claimant's option in accordance with the Commission's arbitration rules in effect at the time of applying for arbitration. The arbitral award is final and binding upon both parties.

Pursuant to the Contracts, between July and December 2000, China National shipped the DVD players which Apex agreed to purchase under the Contracts. An invoice reflecting the amount due under the Contracts accompanied each of the shipments.

Apex received a variety of customer complaints regarding defective Shinco DVD players and experienced a higher than normal rate of return with respect to the AD-500A and AD–703 DVD players. Despite notice of the defects, Apex continued to order AD–500A and AD–703 DVD players and ship them to retailers.

In October and November 2000, Apex informed China National that because of the numerous defects the DVD players exhibited, it considered China National to be in breach of contract. Sometime after December 29, 2000, Apex withheld payment on invoices for DVD players which China National had shipped between August and November 2000. China National made written demands for payment on the

---

1. The court declines to rule on the objections the parties raised to evidence submitted in support and opposition of the motion to dismiss as such evidence is not pertinent to the court's ruling on the motion.

2. Apex also ordered model AD–800A DVD players. Although Apex and china National

dispute whether they each complied with the terms of the contracts respecting the AD–800A DVD players, that dispute is not relevant here. China National based its writ of attachment application solely on Apex's failure to pay on the contracts concerning the AD–500A and AD–703 DVD players.

remaining invoices, but Apex has refused to pay.

China National filed a complaint in this court against Apex stating claims for breach of contract and an account stated. Both China National and Apex have filed applications with CIETAC to arbitrate before it their claims against the other. China National filed this action solely for the purpose of obtaining a writ of attachment to ensure that it will be able to recover from Apex in the event that China National prevails in arbitration.

The magistrate judge granted China National's application for a writ of attachment in the amount of $18,975,059. Apex seeks review of the magistrate judge's order. The magistrate judge found, contrary to Apex's assertions, that this court had jurisdiction to issue a writ of attachment. With respect to the merits of China National's attachment application, the magistrate judge found that China National had shown the probable validity of its breach of contract claim and that China National met the other requirements for issuing an attachment. The magistrate judge rejected Apex's offset claims.

Apex does not challenge the magistrate judge's finding of the probable validity of China National's contract claim. Rather, it contends that the court did not have subject matter jurisdiction to issue a writ of attachment as a result of the parties' agreement to arbitrate before CIETAC. Apex further contends that if the court does have jurisdiction, the amount of the attachment should have been reduced by its offset claims.

Apex has also brought a motion to dismiss pursuant to Rules 12(b)(1) and

12(b)(6) based on the court's lack of subject matter jurisdiction.[3] Because the motion to review and reconsider the magistrate judge's order and the motion to dismiss both raise the same legal question whether the court has subject matter jurisdiction, the court's analysis addresses both motions together.

## II.

### ANALYSIS

**A. Standard for Reviewing a Magistrate Judge's Order Under Fed. R.Civ.P. 72(a)**

■ A district court will not modify or set aside a magistrate judge's order unless it is "found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo. *See Wolpin v. Philip Morris, Inc.* 189 F.R.D. 418, 422 (C.D.Cal.1999).

**B. Standard for Analyzing a Rule 12(b)(1) motion**

■■ A motion to dismiss pursuant to Rule 12(b)(1) challenges the plaintiff's assertion that the court has subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion can be a facial or a factual challenge to jurisdiction. *Thornhill Publishing Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir.1979). A facial attack is based on the failure of the allegations of the complaint to establish subject matter jurisdiction while a factual

---

**3.** Apex premised its motion on Rule 12(b)(6) because China National alleges diversity jurisdiction. The thrust of Apex's motion, however, is that the court does not have subject matter jurisdiction over any of China National's claims to which diversity jurisdiction

would be applicable because the parties agreed to arbitrate those claims and only the arbitral tribunal has the authority to award relief. Therefore, the court will determine Apex's motion solely on the basis of Rule 12(b)(1).

attack is based on the examination of extrinsic evidence which establishes that the court does not have subject matter jurisdiction. *Doe v. Schachter,* 804 F.Supp. 53, 56 (N.D.Cal.1992). When, as in this case, the defendant asserts a factual challenge, the allegations in the complaint are not presumed true. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). The court may receive evidence regarding jurisdiction and resolve factual disputes. *Id.* As always, the party invoking federal jurisdiction has the burden of proving that jurisdiction exists. *KVOS, Inc. v. Associated Press,* 299 U.S. 269, 277, 57 S.Ct. 197, 200, 81 L.Ed. 183 (1936); *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986).

## C. The International Convention on the Recognition and Enforcement of Foreign Arbitral Awards does not Deprive the Court of Subject Matter Jurisdiction to Make Ancillary Orders.

Apex claims that this court does not have subject matter jurisdiction over the action because Article II(3) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") precludes it. Under Article II(3), "[t]he court of a Contracting State, when seized of an action in a matter in respect to which the parties have made an agreement within the meaning of this article, shall at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void; inoperative or incapable of being performed." Apex contends that Article II(3) as applied to paragraph 15 of the Contracts requires

that once this court refers the parties to arbitration it loses subject matter jurisdiction over this action for breach of the Contracts. It supports its position by contrasting the language used in the Convention with the language of Chapter 1, Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3 ("Section 3"). Chapter 1 of the FAA applies to domestic arbitration agreements while Chapter 2 of the FAA applies to international arbitration agreements that come under the Convention. *See* 9 U.S.C. §§ 1, 2, 202. Section 3 specifically authorizes the district court to stay an action pending arbitration, while the Convention and Chapter 2 are silent as to the court's authority to issue a stay.[4] Apex concludes from this silence that the Convention does not authorize a court to stay an action referable to arbitration. Rather, the court has no power to order any type of ancillary relief, such as a writ of attachment, but must dismiss the action upon referral to arbitration because the court has no jurisdiction except to refer it to arbitration.

The Third and Fourth Circuits seem to support Apex's position that the Convention renders courts without jurisdiction to award provisional remedies when the parties have agreed to international arbitration. *See McCreary Tire & Rubber Co. v. Ceat S.p.A.,* 501 F.2d 1032, 1038 (3rd Cir. 1974); *ITAD Assoc. v. Podar Bros.,* 636 F.2d 75, 77 (4th Cir.1981) (following *McCreary*). In *McCreary,* the Third Circuit reversed a district court's orders granting prejudgment attachment and denying a stay of case pending arbitration.

---

4. Section 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The court reasoned that under Article II(3) of the Convention, the district court had no authority to grant any requested provisional remedy but its jurisdictional power was limited to referring the action to arbitration as agreed by the parties. *See McCreary*, 501 F.2d at 1037–38. The court stated:

> Quite possibly foreign attachment may be available for the enforcement of an arbitration award. This complaint does not seek to enforce an arbitration award by foreign attachment. It seeks to by-pass the agreed upon method of settling disputes. Such a bypass is prohibited by the Convention if one party to the agreement objects. Unlike § 3 of the federal Act, article II(3) of the Convention provides that the court of a contracting state shall 'refer the parties to arbitration' rather than 'stay the trial of the action.' The Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate.

*Id.* at 1038. The court also reasoned that the purpose of 9 U.S.C. § 205 ("Section 205"), which permits removal of cases involving agreements falling under the Convention from state court to federal court was "to prevent the vagaries of state law from impeding [the Convention's] full implementation." *Id.* The court concluded that permitting parties to utilize state prejudgment attachment procedures would undermine this purpose. *See id.*

The *McCreary* court's argument in support of reversing the attachment order based on the removal provision in Section 205 is unsound. The court read Section 205 as reflecting a policy that agreements falling under the Convention be decided according to federal law rather than state law and that permitting state attachment remedies was inconsistent with this policy. *Id.* However, regardless whether a case arising under the Convention is in state or federal court, state attachment procedures apply pursuant to Fed.R.Civ.P. 64. *Carolina Power & Light Co. v. Uranex*, 451 F.Supp. 1044, 1052 (N.D.Cal.1977). Furthermore, cases falling under Chapter 1 of the FAA are removable pursuant to 28 U.S.C. § 1141, *id.*, and courts have held that state provisional remedies are consistent with the terms of Chapter 1 of the FAA. *See for example PMS Distribut. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 641 (9th Cir.1988); *Teradyne, Inc. v. Mostek*, 797 F.2d 43, 47 (1st Cir.1986).

■ The court agrees with the magistrate judge and numerous other courts that have rejected *McCreary*'s reasoning. *McCreary*'s distinction between the language of the Convention, which requires that the court refer a dispute to arbitration without specifically mentioning that the court can stay a case pending arbitration, and Section 3, which authorizes a stay pending arbitration, is unconvincing. *See Filanto v. Chilewich Int'l Corp.*, 789 F.Supp. 1229, 1242 (S.D.N.Y.1992); *Carolina Power & Light*, 451 F.Supp. at 1052. The magistrate judge was correct that little significance can be drawn from the Convention's use of the word "refer" without mentioning the ability to stay an action.[5]

Moreover, 9 U.S.C. § 208 ("Section 208") undermines *McCreary*'s reasoning. Section 208 provides that the provisions of Chapter 1 of the FAA governing domestic arbitration apply to proceedings involving

---

5. The court notes that England, which, unlike the United States, assisted in drafting the Convention, has given its courts the authority by statute to order provisional remedies in cases governed by the Convention. *See*

Charles H. Brower, II, *What I Tell You Three Times is True; U.S. Courts and Pre-Award Interim Measures Under the New York Convention*, 35 Va. J. Int'l L. 971, 1005-06 (1995)

agreements subject to the Convention to the extent that the provisions of Chapter 1 do not conflict with Chapter 2 of the FAA or the Convention. The provisions of Chapter 2 of the FAA and of the Convention do not prohibit issuing a stay, and thus, do not conflict with Section 3. *Roadtechs, Inc. v. MJ Highway Tech., Ltd.*, 79 F.Supp.2d 637, 639 (E.D.Va.2000).

Courts have employed similar reasoning to find attachment available in admiralty cases under the Convention. Chapter 1, Section 8 of the FAA, 9 U.S.C. § 8, authorizes attachment in admiralty cases, but Chapter 2 does not contain an analogous provision. Nonetheless, courts have consistently held that in admiralty cases under the Convention, a party can obtain a writ of attachment. They reason that because the Convention and Chapter 2 do not prohibit attachment, they can apply Section 8 due to Section 208's incorporation provision. *See E.A.S.T., Inc. of Stamford, Connecticut v. M/V Alaia*, 876 F.2d 1168, 1173 (5th Cir.1989); *Atlas Chartering Servs. v. World Trade Group*, 453 F.Supp. 861, 863 (S.D.N.Y.1978). *Andros Compania Maritima, S.A. v. Andre & Cie, S.A.*, 430 F.Supp. 88, 91–92 (S.D.N.Y.1977).

Although Chapter One of the FAA does not specifically authorize provisional relief such as attachment in non-admiralty cases, the Ninth Circuit has held that such relief is available and does not conflict with the parties' agreement to arbitrate. *See PMS Distrib. Co.*, 863 F.2d at 641. *PMS Distrib.* involved an appeal from a district court order granting a writ of possession. PMS Distributing argued that the district court was without jurisdiction to issue a writ of possession because it had ordered the parties to arbitrate pursuant to 9 U.S.C. § 4. *Id.* at 640. The court disagreed and held that an order to compel arbitration does not strip a district court of authority to grant a writ of possession. *Id.* at 642. Thus, applying the reasoning

of *E.A.S.T.* and similar admiralty cases, since the Ninth Circuit allows provisional remedies in domestic arbitration cases, and no provision in Chapter 2 or the Convention expressly prohibits such remedies, they are available in cases governed by the Convention.

Rather than conflicting with the parties' agreement to arbitrate, provisional remedies such as attachment reinforce arbitration agreements by ensuring that assets from which an arbitration award would be satisfied are secured while arbitration is pending. The Ninth Circuit quoted the First Circuit with approval, "We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, ipso facto, the meaningfulness of the arbitration process." *PMS Distrib.*, 863 F.2d at 641–42 (quoting *Teradyne*, 797 F.2d at 51). This principle applies equally to cases falling under Chapter 1 of the FAA or the Convention. *See Borden, Inc. v. Meiji Milk Products Co., Ltd.*, 919 F.2d 822, 826 (2d Cir.1990) (concluding that issuing a preliminary injunction was consistent with the Convention and the "desire to make as effective as possible recovery upon [arbitral] awards, after they have been made").

The court disagrees with Apex and *McCreary* and concludes that Article II(3) of the Convention does not deprive the court of subject matter jurisdiction over this action and particularly to order provisional relief, e.g., a pre-arbitral award writ of attachment pending reference to arbitration and pending the conclusion of the arbitration proceedings.

**D.** *Simula* **Prohibits the Court from Ordering a Writ of Attachment**

Apex raises a second challenge to the court's jurisdiction to issue a writ of at-

tachment. It contends that because Article 23 of CIETAC's arbitral rules provides a procedure for obtaining provisional remedies within the arbitration proceeding, this court is without jurisdiction to issue a writ of attachment to the extent China National has not followed CIETAC's procedures, citing *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716 (9th Cir.1999). In *Simula,* Simula asserted that the district court erred in denying its application for a preliminary injunction because the Swiss Arbitral Tribunal, before which it agreed to arbitrate, could not issue a preliminary injunction. *See id.* at 725. The Ninth Circuit noted that the applicable rules of the International Chamber of Commerce ("ICC") Rules of Arbitration provided that the Swiss Arbitral Tribunal had authority to award provisional remedies. *Id.* Therefore, the court held that because "the ICC arbitral tribunal is authorized to grant the equivalent of an injunction *pendente lite,* it would have been inappropriate for the district court to grant preliminary injunctive relief." *Id.* at 726.

Article 23 of CIETAC's arbitral rules provides:

> When a party applies for property preservative measures, the Arbitration Commission shall submit the party's application to the people's court for a ruling in the place where the domicile of the party against whom the property preservative measures are sought is located or in the place where the property of the said party is located.

China National contends that *Simula* does not limit the court's authority to award provisional relief because Article 23 does not permit the arbitral tribunal itself to award provisional relief, but instead directs the arbitral tribunal to submit an application for provisional relief to an appropriate people's court. The magistrate judge agreed with China National's reading that *Simula* permits this court to

grant provisional relief unless the arbitral tribunal itself is authorized to award equivalent relief.

Apex vigorously disagrees with this interpretation. Apex contends that the magistrate judge's conclusion that the court has authority to issue an attachment in this case ignores the parties' agreement to arbitration rules providing for an alternative method of obtaining an attachment, i.e., the arbitration commission does not determine whether to order a "property preservative measure" but a people's court does. In essence, Apex maintains that prohibiting courts from ordering provisional remedies when the arbitration panel itself can award the remedies but allowing courts to order provisional remedies despite arbitration rules that provide for a method of obtaining such a remedy is a distinction that makes no sense. In the first instance, the court is respecting the parties' agreement to arbitrate under a particular set of rules, while in the latter, the court is ignoring the rules under which the parties agreed to arbitrate. Apex reads *Simula* as standing for the proposition that if the parties agreed to arbitral rules that provide for a method of obtaining provisional relief, courts cannot award such relief but must defer to the arbitral rules.

Even if Apex is correct that *Simula* rests on the fact that the parties agreed to arbitral rules providing for a method of obtaining injunctive relief and not on the fact that the arbitral tribunal could award such relief, China National argues that *Simula* is still distinguishable because the arbitral rules upon which Apex and China National agreed do not provide a method to obtain an attachment when the property to be attached is located outside of China. China National interprets Article 23 as providing that CIETAC will transmit an application for an attachment to the Chi-

nese people's court in the domicile of the party against whom the measure is sought or where the property to be attached is located. Since Apex is not domiciled in China and has no property in China, there is no people's court to which an attachment application could be submitted. China National therefore concludes that because the arbitral rules as applied to the facts of this case do not provide a method by which it can obtain an attachment against Apex's property, it is free to seek an attachment from this court.

Apex responds that China National must be bound by the method of seeking provisional relief to which it agreed. The CIETAC arbitration rules provide a procedure for obtaining provisional relief. If as a result of that procedure, China National cannot obtain a remedy, then it simply is without a remedy and cannot seek an attachment from this court.

█ The court finds Apex's reading of *Simula* more persuasive. In this case, as in *Simula,* the arbitral rules authorize provisional relief. The court considers it a distinction without a difference that in *Simula* the ICC rules authorized the arbitral tribunal to award remedies while in this case the arbitral rules provide that the arbitral tribunal submits an application for provisional remedies to a people's court for determination. In either case, the parties have agreed to abide by arbitration rules which provide a method and forum for obtaining provisional relief. *Simula* dictates that the court must respect that agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief.

The court also agrees with Apex that whether or not China National can ultimately obtain a writ of attachment under Article 23 is irrelevant to the question whether this court can award such relief. The inquiry under *Simula* is limited to

asking whether the arbitral rules authorize provisional relief, which CIETAC's rules do. China National must accept the consequences of the provisions of the agreement to arbitrate if there is no people's court with jurisdiction to which CIETAC can submit an application for a writ of attachment or if it is otherwise unsuccessful in obtaining such provisional relief.

The court concludes that under *Simula,* it has no authority to grant a pre-arbitral award writ of attachment. Therefore, the magistrate judge's right to attach order granting a writ of attachment was contrary to law and must be set aside. In addition, the court will dismiss the action, since it has no jurisdiction to grant the only relief China National seeks from it, namely a pre-arbitration award writ of attachment, and the parties have initiated arbitration proceedings under paragraph 15 of the Contracts. Finally, based on the court's analysis and indicated rulings, it deems Apex's request for a stay or in the alternative an immediate certification to be moot and will deny such requests.

### III.

### *DISPOSITION*

ACCORDINGLY, IT IS ORDERED THAT:

1) Defendant Apex Digital, Inc.'s motion for review and reconsideration of the magistrate judge's order granting plaintiff China National's application for writ of attachment is GRANTED;

2) The magistrate judge's order granting China National's application for writ of attachment is SET ASIDE;

3) The claims in this action are referred to CIETAC.

4) Defendant Apex Digital Inc.'s motion to dismiss under Rule 12(b)(1) is GRANTED;

5) Defendant Apex Digital, Inc.'s request for a stay is DENIED as moot; and

6) Defendant Apex Digital, Inc.'s request for immediate certification is DENIED as moot.