**EVER–GOTESCO RESOURCES AND HOLDINGS, INC., and PriceSmart Trading Philippines, Inc., Plaintiffs,**

v.

**PRICESMART, INC., Defendant.**

No. 01–CV–2357 W(LAB).

United States District Court,
S.D. California.

Feb. 12, 2002.

Craig I. Celniker, Charles S. Evendorff, Helen S. Irza, Morrison & Foerster, San Diego, CA, for Plaintiffs.

Joseph J. Wheeler, Allison C. Rosenstock, Leigh A. Bradberry, Latham & Watkins, San Diego, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WHELAN, District Judge.

On January 14, 2002 Defendant PriceSmart, Inc. ("PriceSmart") moved to dismiss this action on five separate grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure; (2) failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (3) absence of an indispensable party pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure; (4) principles of abstention due to a pending parallel foreign action; and (5) forum non conveniens. Plaintiffs Ever–Gotesco Resources and Holdings, Inc. ("Ever–Gotesco") and PriceSmart Trading Philippines, Inc. ("PSTP") timely opposed. All parties are represented by counsel. After reviewing the papers submitted by the parties and the applicable law, the Court **GRANTS** Defendant's motion to dismiss.

## I. *BACKGROUND*

Plaintiff Ever–Gotesco is a major Philippines retailer operating several malls and supermarkets. Defendant PriceSmart operates stores in Asia, the Caribbean, and Central America based on the PriceSmart membership merchandising concept. This concept gives customers the right to purchase a membership and thereafter shop at warehouse-style stores offering low prices.

On March 5, 1997 Plaintiffs and Defendant executed a Licensing and Technology Transfer Agreement ("Agreement"). In so doing, Plaintiff Ever–Gotesco secured the exclusive Philippine license to establish and operate stores modeled after PriceSmart merchandising concepts. The agreement further granted Plaintiff Ever–Gotesco exclusive intellectual property, trademarks, signage, and computer software system rights. Following the terms of the agreement, Plaintiff Ever–Gotesco incorporated Plaintiff PriceSmart Trading as a new Philippine corporation to serve as the stores' operating company. The Agreement was to last twenty years.

On January 6, 1998 Defendant sent Plaintiffs a Notice of Termination.[1] On March 9, 1998 Defendant's counsel sent Plaintiffs a letter confirming the Notice of Termination. On May 18, 2001 Defendant opened its first competing Philippines S & R Price Membership Shopping Store ("S & R"). Plaintiffs allege this store infringes Plaintiffs' exclusive Philippines rights to PriceSmart's trademark and business model.

On June 11, 2001 Plaintiffs commenced a breach of contract action in the Philippines Regional Trial Court of Las Piñas City seeking damages and injunctive relief. On June 13, 2001 the Regional Trial Court of Las Piñas City granted Plaintiffs' *ex parte* request for a Temporary Restraining Order enjoining Defendant PriceSmart from operating S & R for seventy-two hours. On June 15, 2001 the same Philippines court modified the TRO and ordered an immediate closing of S & R for seventeen days. Defendant appealed.

On June 19, 2001 the Philippines Court of Appeals in Manila disagreed with the lower court's injunction, and stayed its en-

---

1. While the parties devote considerable argument to the validity of the Notice, the Court finds the matter irrelevant to the jurisdictional decision reached herein.

forcement for 60 days. By order dated October 18, 2001 the Philippines Court of Appeals overturned and vacated the lower court's TRO, thereby permitting Defendant's continued operation of its stores.

On September 13, 2001 Defendant served Plaintiffs a Notice of Arbitration. On December 26, 2001 Plaintiffs commenced this action seeking injunctive relief pending arbitration. On January 14, 2002 Defendant filed the motion to dismiss currently before this Court.

## II.  LEGAL STANDARD

■■■ The Federal Arbitration Act ("FAA") governs disputes involving contracts which touch upon interstate commerce or maritime law. 9 U.S.C. §§ 1 et seq. Federal law governs the question of arbitrability. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The district court only has power to determine whether an agreement to arbitrate exists, and if so, to enforce such agreement in accordance with its terms. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir.1999) (citing Howard Elec. & Mech. Co., Inc. v. Briscoe Co., 754 F.2d 847, 849 (9th Cir.1985)).

■■■ Arbitration clauses may be attacked "upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. This section of the FAA has been interpreted to create a federal substantive law of arbitrability. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc., 925 F.2d 1136, 1139 (9th Cir.1991) ("[F]ederal law preempts state law on issues of arbitrability."); Bayma v. Smith, Barney, Harris, Upham & Co., Inc., 784 F.2d 1023, 1024–25 (9th Cir. 1986) (same); Golenia v. Bob Baker Toyota, 915 F.Supp. 201, 204 (S.D.Cal.1996) (Jones, J.) (federal law controls on FAA issues). The Supreme Court has held that the FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Simula, 175 F.3d at 719 (citing Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Such agreements are to be rigorously enforced. Id., (citing Dean Witter, 470 U.S. at 221, 105 S.Ct. 1238). Further, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id., (quoting Moses H. Cone, 460 U.S. at 24–25, 103 S.Ct. 927).

## III.  DISCUSSION

### A.  THE ARBITRATION AGREEMENT

The narrow issue before this Court is the parties' respective interpretation of the Agreement's arbitration language. The relevant arbitration clause provides as follows:

13.  ARBITRATION

13.1  Except for injunctive relief under section 9, 10, and 12.3, all disputes, claims and controversies concerning the validity, interpretation, performance, termination and/or breach of this Agreement ("Dispute(s)") shall be referred for final resolution to arbitration in Sydney, Australia under the UNCITRAL rules (the "Rules"). The appointing authority shall be the Australian Centre for International Commercial Arbitration. All proceedings shall be conducted in the English language. The parties hereby agree that arbitration hereunder shall be the parties' exclusive remedy and that the arbitration decision and award, if any, shall be final, binding upon, and enforceable against the parties and may be confirmed by the judgment of a court of competent jurisdiction. In the event of any conflict between the Rules and

this paragraph, the provision of this paragraph shall govern.

(*Pl.'s Cmpl.,* Ex. 1 at § 13.1.) Defendant argues this language mandates the submission of any dispute to arbitration, including Plaintiffs' present request for provisional relief. Plaintiffs counter that the arbitration clause makes no mention of provisional relief. Further, Plaintiffs argue that UNCITRAL § 26(3) grants Plaintiffs the express authority to come before this Court seeking provisional relief pending arbitration.[2]

## B. PROVISIONAL RELIEF IS ARBITRABLE

■ Seeking to avoid the arbitration clause in this case, Plaintiffs contend its present provisional relief request is not arbitrable. The parties' dispute involves the opening, management, and operation of various Philippines stores. Plaintiffs contend that Defendant's competing stores have caused irreparable harm to Plaintiffs' exclusive intellectual property rights such that immediate provisional relief is warranted.

The Court disagrees.

■ It is well settled that courts must liberally construe the scope of arbitration agreements. *Simula,* 175 F.3d at 720 (citing *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 479 (9th Cir. 1991)). In *Simula,* the language at issue covered "all disputes arising in connection with this Agreement." *Id.* at 720. In analyzing whether this language covered the claims at issue in that case, the Ninth Circuit stated that the "factual allegations need only 'touch matters' covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Id.* (citing *Mitsubishi Motors v. Soler Chrysler–Plymouth, Inc.,*

473 U.S. 614, 624 n. 13, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (other citations omitted)).

Regardless of the parties' labeling of this dispute's nature, this Court finds that the *entire dispute* "touch[es] matters" covered by the parties' Agreement and corresponding arbitration provision. The fundamental nature of the parties relationship is an exchange of intellectual property regarding the operation of commercial stores. This relationship was memorialized in the Agreement containing the arbitration clause. In seeking injunctive relief from Philippine courts, Plaintiffs sought and initially secured injunctive relief expressly shuttering Defendant's store. This injunctive relief was predicated on Defendant's alleged Agreement violation. The Agreement containing the arbitration clause is at the very core of this dispute; any argument to the contrary strains credulity. Therefore, the provisional relief Plaintiffs seek is clearly arbitrable.

## C. PLAINTIFFS' RELIANCE ON UNCITRAL IS UNPERSUASIVE

■ Seeking an exception to the arbitration provision's application, Plaintiffs rely heavily on UNCITRAL § 26(3). The section states that arbitrating parties may seek interim measures from a judicial authority. Relying on this provision, Plaintiffs seek this Court's injunctive authority to grant provisional relief. However, a more thorough review of the Agreement reveals that Plaintiffs' reliance on UNCITRAL § 26(3) is misplaced.

The parties' arbitration clause expressly states that "[i]n the event of any conflict between the Rules [UNCITRAL] and this paragraph, the provision of this paragraph

2. UNCITRAL § 26(3) provides as follows: "A request for interim measures addressed by any party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate, or as a waiver of that agreement." (*Everdorff Decl.,* Ex. 3 at § 26(3).)

shall govern." (*Pl.'s Cmpl.*, Ex. 1 at § 13.1.) This language could not be more clear. Its terms shall exclusively govern under almost any circumstance.[3] UNCITRAL § 26(3) clearly conflicts with the parties' arbitration clause, which mandates that parties may only seek relief from an *arbitral* tribunal. (*Pl.'s Cmpl.*, Ex. 1 at § 13.1.) Although Plaintiffs cleverly seek to cloak their request as one for provisional relief, the effort fails.

Even assuming this Court were to entertain their request and grant relief thereon, the Ninth Circuit has expressly forbidden such relief when an arbitral tribunal can grant the same. In a remarkably similar case, the Ninth Circuit expressly stated: "[b]ecause the district court correctly concluded that all of Simula's claims were arbitrable and the ICC arbitral tribunal is authorized to grant the equivalent of an injunction pendente lite, *it would have been inappropriate for the district court to grant preliminary injunctive relief.*" *Simula*, 175 F.3d at 726 (emphasis added); *see also China National Metal Products Import/Export Co. v. Apex Digital, Inc.*, 155 F.Supp.2d 1174, 1182 (C.D.Cal.2001) (applying *Simula* and referring injunctive relief claim to arbitral tribunal). Accordingly, the Court concludes that the Agreement's express terms must govern. UNCITRAL § 26(3) does not apply here.

### D. THE ARBITRAL TRIBUNAL HAS THE POWER TO GRANT PROVISIONAL RELIEF

█ Plaintiffs next argue that because no arbitral tribunal has yet been constituted, no existing body has the power to grant provisional relief. The Court disagrees.

The origins of this dispute span over five months. Rather than follow the unambiguous terms of the Agreement, Plaintiffs elected to commence rigorous litigation in the Philippines. Four months, a stay, and two court orders later, this entire dispute was referred to arbitration in Sydney, Australia. Compounding their delay and refusal to abide by the terms of the Agreement, Plaintiffs commenced this action. The Southern District of New York recently dealt with a case involving dilatory tactics and arbitration, and stated:

> It is one thing to apply to a court to preserve the status quo until a duly constituted arbitrator can act; but it is quite another thing to consciously avoid taking steps that would give the arbitrator the ability to act and, instead to apply to another court for relief. Given the modern preference for international arbitration, such bootstraps are no longer fashionable.

*Al Nawasi Trading Co. v. BP Amoco Corp.*, 191 F.R.D. 57, 59 (S.D.N.Y.2000). Plaintiffs' tenuous position here is disingenuous and contradicted by the record.

Plaintiffs are not without recourse in the arbitral tribunal, which retains injunctive powers. Section 26(1) of UNCITRAL expressly states that "the arbitral tribunal may take any interim measures it deems necessary in respect of the subject-matter of the dispute[.]" Plaintiffs invite this Court to nonetheless supersede the arbitral tribunal's clear injunctive powers. The Court declines to do so.

As one district court noted, "the parties have agreed to abide by arbitration rules

---

**3.** The only exceptions to this rule are actions for injunctive relief under § 9 (dealing with indemnities), § 10 (dealing with Plaintiffs' duties of confidentiality and non-competition to Defendant), and § 12.3 (option to pur-chase). Neither party contends that the present action falls under any of these exceptions such that the Court need not address them here.

which provide a method and forum for obtaining provisional relief. *Simula* dictates that the court must respect that agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief." *China National Metal Products Import/Export Co. v. Apex Digital, Inc.*, 155 F.Supp.2d 1174, 1182 (C.D.Cal.2001). The aforementioned equally applies here. If any injunctive relief is to issue in this case, it is within the province of the Australian arbitral tribunal, and not this Court.

## E. COLLATERAL ESTOPPEL PRINCIPLES ALSO JUSTIFY DISMISSAL

■ Even assuming the Court wished to grant injunctive relief, notions of collateral estoppel would bar such a remedy. Defendant argues collateral estoppel bars this action. Plaintiffs disagree, arguing that the Philippine Court of Appeals did not decide the *merits* of the requested provisional relief. Defendant counters that Plaintiffs misconstrue Defendant's collateral estoppel argument. The Court agrees. The determinative issue for collateral estoppel purposes is not the provisional relief's merits, but rather its arbitrability. Collateral estoppel bars Plaintiffs from revisiting arbitrability such that the merits of any provisional relief is simply not at issue.

■ In order to prevail on a collateral estoppel argument, Defendant must show: (1) Plaintiffs' full and fair opportunity to litigate; (2) litigation on the issue; (3) a final judgment resolving the issue against Plaintiffs, and (4) identical parties. *In re Palmer*, 207 F.3d 566, 568 (9th Cir.2000); *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.1992); *see generally Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The Court finds that the arbitrability issue in this case satisfies all collateral estoppel elements.

First, Plaintiffs had a full and fair opportunity to litigate. It was Plaintiffs, not Defendant, who commenced the Philippine litigation seeking injunctive relief. Second, while the Philippine Court of Appeals ultimately deemed the entire dispute arbitrable, Plaintiffs fully litigated the issue in both the Philippines trial court and the Philippines Court of Appeals. For example, the Philippine Court noted:

> "[T]he petitioner (Defendant in this case) maintains that the arbitration clause in the LTTA in suit removes the case below from the jurisdiction of the lower court. On the other hand, the private respondents (Plaintiffs in this case) insist that under Section 14.7 of the LTTA...the respondent court has jurisdiction over the action they filed with it[.]"

(*Def. Mot. to Dismiss*, Ex. B at 26.) In fact, the Philippine courts exercised jurisdiction over Plaintiffs' claims, made a ruling on the merits, ordered the parties to arbitration and then stayed the action pending the parties' compliance therewith. While Plaintiffs may disagree with the final outcome rendered in the Philippines, it does not alter the fact that the Philippine court reached the merits of an issue that was dispositive of the entire preliminary injunction proceeding. The arbitrability matter was therefore clearly litigated for collateral estoppel purposes.

Third, the Philippine Court of Appeals entered a final judgment against Plaintiffs finding that Plaintiffs' desired provisional relief was clearly arbitrable. The Philippine Court of Appeals concluded:

> WHEREFORE, finding merit in the petition, the private parties are ordered to proceed to arbitration in accordance with paragraphs 13 and 14.7 of their Licensing and Technology Transfer

Agreement (LTTA) and the respondent court is order to DESIST from further hearing or taking any action on Civil Case No. LP–01–0165 to await the outcome of the arbitration.

(*Def. Mot. to Dismiss*, Ex. B at 27.)

Fourth, it is undisputed that the parties in the Philippines litigation and the present case are identical.[4] All four collateral estoppel elements are therefore met such that Plaintiffs are procedurally barred from relitigating arbitrability before this Court.

### F. FORUM NON CONVENIENS

 Finally, dismissal is also warranted on the basis of forum non conveniens. This Court has previously held that forum non conveniens dismissals are proper when an adequate alternative forum exists, and private and public interest factors favor dismissal. *Meridian Seafood Products, Inc. v. Fianzas Monterrey, S.A.*, 149 F.Supp.2d 1234, 1237 (S.D.Cal.2001). Here, the availability of the Australian arbitral tribunal, coupled with the required application of Philippines law, clearly justifies dismissal under this theory. *Id.*

### IV. CONCLUSION AND ORDER

The parties entered into a contract and agreed to settle all disputes through arbitration. Plaintiffs have failed to identify any reasonably ground to overcome that binding contractual provision. Arbitrable matters seeking arbitrable relief belong in arbitration. For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss. (Doc. No. 26–1.) In light of this dismissal, the stay is dissolved and all remaining motions are **DENIED** as moot.

The Clerk of Court shall close the district court case file and terminate the case.

**IT IS SO ORDERED.**

---

4. To the extent Plaintiffs' actions were potentially motivated by forum shopping, the Court urges Plaintiffs to reconsider wasting the Court's and parties' limited time and resources on issues that were fully litigated and determined in other courts. Notwithstanding commencement of this action, the Court finds it was filed in good faith such that neither party is entitled to attorney's fees or costs associated herewith.