**BORDEN, INC., Appellant,**

v.

**MEIJI MILK PRODUCTS CO., LTD., Appellee.**

**No. 793, Docket 90–7840.**

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1990.

Decided Nov. 21, 1990.

Kevin J. Plunkett, New York City (William F. Plunkett, Jr., Arthur J. Semetis, and Plunkett & Jaffe, New York City; Walter W. Kocher, Hans Fischer and H. Stephen Harris, Jr., Columbus, Ohio, on the brief) for appellant Borden, Inc.

Samuel Kadet, New York City (Barry H. Garfinkel, Steven J. Kolleeny, Chase A. Caro; Brian D. Graifman, and Skadden, Arps, Slate, Meagher & Flom, New York City on the brief), for appellee Meiji Milk Products Co., Ltd.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Borden, Inc. (Borden) appeals from an order entered October 3, 1990 in the Southern District of New York, Mary Johnson Lowe, *District Judge*, dismissing the action on the ground of forum non conveniens.

Borden commenced this action on August 30, 1990, seeking a preliminary injunction in aid of arbitration. The court granted the motion of appellee Meiji Milk Products Co., Ltd. (Meiji) to dismiss.

On appeal, Borden contends that the court erred in dismissing the action because (1) Meiji failed to sustain its burden of showing that an adequate remedy was available in the alternate forum; (2) the court relied on erroneous factual assumptions; and (3) New York procedural rules barred dismissal of the action. Meiji contends that the dismissal should be affirmed on the ground of forum non conveniens or, in the alternative, on the ground that the court lacked subject matter jurisdiction.

For the reasons set forth below, we affirm the order dismissing the action on the ground of forum non conveniens.

I.

We shall set forth only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

Borden, a New Jersey corporation with offices in New York City, is a multi-national corporation engaged in the manufacture and distribution of food, dairy and consumer products in the United States and throughout the world. Meiji, a Japanese corporation with offices in New York City, is engaged in the manufacture of milk and milk products in Japan and other parts of the world. In 1983, Borden and Meiji entered into a Trademark License and Technical Assistance Agreement (the agreement), pursuant to which Borden licensed the use of its name and logo to Meiji to be used on

a variety of margarine products manufactured and sold by Meiji in Japan for a period of seven years. The agreement, which was performed entirely in Japan, expired by its terms on October 3, 1990.

For the past seven years, Meiji has sold a number of margarine products bearing the Borden trademark. The formulas and techniques used to manufacture the margarine products are owned by Meiji. Meiji has obtained protection under Japanese Design Patent law for the margarine packaging it has used.

Although the agreement has now expired, Meiji continues to market margarine, in Japan, in the packaging it had been using while the agreement was in force, but now without any use of the Borden trademark or logo. Borden contends that the use of the packaging is an "appropriation" in violation of the agreement.

Section 16 of the agreement specifically provides that all disputes arising in connection with the agreement shall be finally settled by arbitration pursuant to the Japanese–American Trade Arbitration Agreement of September, 1952. Accordingly, on August 24, 1990, Borden filed a demand for arbitration, alleging that Meiji had breached the agreement and unfairly competed with Borden. Meiji contends that Japanese patent law authorizes its continued use of the packaging and asserts that the agreement between the parties is silent as to any use by Meiji of packaging after termination of that agreement. The site of arbitration—which will be either New York or Japan—has not yet been determined.

On August 30, 1990, Borden commenced this action in the Southern District of New York, alleging claims for breach of contract and wrongful destruction of goodwill. Borden sought to compel arbitration pursuant to 9 U.S.C. § 206 (1988). It also sought a preliminary injunction against Meiji's use of the disputed packaging. Jurisdiction was based both on diversity and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention).

On August 30, Borden obtained a temporary restraining order from the Part I Judge, Hon. Robert P. Patterson, Jr. The case subsequently was assigned to Hon. Mary Johnson Lowe for all purposes. On September 5, after hearing arguments from both sides on the preliminary injunction motion, Judge Lowe declined to extend the TRO granted by Judge Patterson. Instead she allowed it to expire by its own terms. Meiji indicated at the September 5 hearing that it intended to file a motion to dismiss on grounds of extraterritoriality and forum non conveniens.

Judge Lowe scheduled a further hearing on the preliminary injunction motion for September 25. She also indicated that the forum non conveniens motion would be heard on that day. She asked that the papers on the forum non conveniens motion be filed in advance of the 25th.

Meiji served and filed its motion to dismiss on September 7. The papers indicated that Meiji would bring on its motion before Judge Lowe on or after September 24; that answering papers were required to be served and filed by September 17; and that any reply by Meiji would be due September 21. On Thursday, September 20, Judge Lowe's chambers informed counsel for Meiji that it wished to receive any reply papers on its motion to dismiss by 3:00 p.m. on September 21. Meiji complied with that request.

Also on September 21, counsel for Borden and Meiji agreed that, at the hearing scheduled for September 25, no Japanese residents would be called to testify as witnesses. That agreement was not communicated to Judge Lowe.

At approximately 6:15 p.m. on Friday, September 21, Judge Lowe's law clerk informed counsel that Judge Lowe had decided to dismiss Borden's action on the ground of forum non conveniens. On October 3, Judge Lowe filed her written opinion. This expedited appeal followed.

## II.

As a threshold matter, we address the question of the court's subject matter jurisdiction to entertain the application for pre-

liminary injunctive relief in aid of arbitration.

This matter was not ruled on by the district court; but, in a brief filed by Meiji just hours prior to the oral argument before us on the instant appeal, Meiji claimed that the district court lacked jurisdiction. Although Meiji's timing in presenting this claim was not ideal, particularly in light of the posture Borden has maintained throughout these proceedings in which it has pressed urgently for an expedited determination on the merits, we recognize that we are required to consider whether there is federal jurisdiction. *Roco Carriers, Ltd. v. M/V Nurnberg Express*, 899 F.2d 1292, 1294 (2 Cir.1990). We have carefully examined the jurisdictional claim. We conclude that we do have jurisdiction.

Meiji's argument is that, since the agreement between the parties contains an arbitration clause, the Convention is applicable. Article II(3) of the Convention provides that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration...." (The full text of the Convention is published following 9 U.S.C.A. § 201 (West Supp.1990)). Borden concedes that the Convention is applicable, but argues that the Convention does not oust the court of jurisdiction to issue an injunction in aid of arbitration. We agree.

Federal courts are charged with enforcing the Convention. 9 U.S.C. § 201 (1988). Specifically, a court "may direct that arbitration be held in accordance with the agreement at any place therein provided for.... Such court may also appoint arbitrators...." *Id.* at § 206. Furthermore, the courts are empowered to confirm an arbitration award once rendered. *Id.* at § 207.

■ Meiji argues that a court's jurisdiction is limited to compelling arbitration or confirming an arbitration award. In the instant case, however, Borden specifically invoked § 206, seeking to have the district court compel arbitration and appoint arbitrators. We hold that entertaining an application for a preliminary injunction in aid of arbitration is consistent with the court's powers pursuant to § 206. *Cf. McCreary Tire & Rubber Co. v. CEAT S.p.A.*, 501 F.2d 1032, 1037–38 (3 Cir.1974) (district court order refusing to vacate an attachment reversed, because underlying complaint sought to bypass arbitration altogether and "[t]he Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate"); *International Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 n. 5 (2 Cir.) (district court properly held that jurisdiction could not be premised on the Convention because "the party invoking its provisions did not seek either to compel arbitration or to enforce an arbitral award"), *cert. denied,* 110 S.Ct. 563 (1989).

■ In the instant case, far from trying to bypass arbitration, Borden sought to have the court *compel* arbitration. New York law specifically provides for provisional remedies in connection with an arbitrable controversy, N.Y.Civ.Prac.L. & R. (CPLR) § 7502(c) (McKinney Supp.1990), and the equitable powers of federal courts include the authority to grant it. *Murray Oil Products Co. v. Mitsui & Co.*, 146 F.2d 381 (2 Cir.1944). Entertaining an application for such a remedy, moreover, is not precluded by the Convention but rather is consistent with its provisions and its spirit. In *Murray*, we held that an arbitration clause "does not deprive the promisee of the usual provisional remedies...." *Id.* at 384. We held that the desire for speedy decisions in arbitration "is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." *Id.*

We hold that the district court properly exercised subject matter jurisdiction.

## III.

■ We deal next with Borden's claim that state procedural rules precluded the district court from dismissing this action on the ground of forum non conveniens. Bor-

den relies on a state law provision, N.Y. CPLR § 327(b) (McKinney 1990), which provides that a court "shall not ... dismiss ... on the ground of inconvenient forum, where the action arises out of or relates to a contract, agreement or undertaking to which section 5–1402 of the general obligations law applies...." By its terms, however, N.Y.Gen.Oblig.Law § 5–1402 (McKinney 1989) applies only when a contract contains a provision whereby a foreign corporation "agrees to submit to the jurisdiction of the courts of this state." *Id.* at § 5–1402(1)(b). The district court correctly concluded that Meiji did not submit to the jurisdiction of the New York state courts simply by agreeing to be bound by *arbitration* that might or might not be in New York. Moreover, the New York choice of law clause in the parties' agreement is not the equivalent of a choice of forum clause. *Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483, 487 (S.D.N.Y.1985). For this same reason, the provision in the agreement that the contract is deemed to have been made in New York is not equivalent to an express choice of forum clause.

We hold that N.Y.CPLR § 327(b) is inapplicable to the instant case. We accordingly need not reach the issue of whether the mandate of § 327(b) would control in this case. Indeed, putting § 327(b) to one side, we need not reach the more general issue of whether forum non conveniens is governed here by state or federal law, since the forum non conveniens doctrine is similar under both federal and New York State law. *See Schertenleib v. Traum*, 589 F.2d 1156, 1162 n. 13 (2 Cir.1978). We may thus proceed by applying federal law to the forum non conveniens issue.

## IV.

This brings us finally to the merits of the forum non conveniens issue. Our review of the district court's dismissal on that basis is extremely limited. In *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), the Supreme Court expressly admonished courts of appeal as follows:

> "The *forum non conveniens* determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference."

There, the Court held that the Third Circuit had erred in rejecting the district court's analysis of the public and private interest factors. *Id.* at 261. In the instant case, we hold that the district court did not abuse its discretion. *In re Union Carbide Corp. Gas Plant Disaster*, 809 F.2d 195, 202 (2 Cir.), *cert. denied*, 484 U.S. 871 (1987).

### (A) *The Gilbert Factors*

The relevant factors for district courts to consider were set forth in the Supreme Court's seminal opinion in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947). The private interests of the litigant include:

> "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained."

*Id.* at 508. Courts also should consider factors of public interest:

> "Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.... There is a local interest in having localized controversies decided at home."

*Id.* at 508–09. As we stated nearly ten years ago, "[f]or more than three decades, Justice Jackson's opinion in [*Gilbert*] has been recognized as the leading authority on forum non conveniens." *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 150 (2 Cir.) (en banc), *cert. denied*, 449 U.S. 890 (1980). In *Alcoa*, we reiterated our adher-

ence to "the simple uniform standard of *Gilbert.*" *Id.* at 153.

The district court in the instant case carefully considered the *Gilbert* factors. It found that only the Japanese market and consumers are affected by the parties' dispute and that all necessary fact witnesses are in Japan. The court found further that an injunction issued in Japan clearly would be enforceable there, whereas one obtained in this country might not be. Examining the public interests at stake, the court found that Japan has a much greater interest in the litigation than does the United States.

■ We are cognizant of the fact, of which Borden makes much, that the district court relied on an erroneous factual assumption in finding that all necessary fact witnesses are in Japan. The court did not have the benefit of knowledge of the parties' agreement, reached on September 21 shortly before its decision was rendered, not to call any Japanese residents as witnesses. This unfortunate error resulted, at least in part, from the highly irregular procedure followed by the court in reaching and rendering its dismissal decision. The court's chambers called counsel for Meiji to ask for an expedited reply brief and, just hours after receiving that brief, called counsel for both sides with word of its decision—four days prior to a scheduled oral argument. We agree with Borden that, had oral argument gone forward as scheduled, the court undoubtedly would have been informed of the parties' salient agreement not to call Japanese residents as witnesses. Although busy district courts are by no means required to hold oral argument on every motion that is filed, it was clearly improper here for the court to schedule oral argument for September 25 and then, in derogation of that schedule, to render its decision on September 21. We do not condone this improper procedure.

While the court's unorthodox procedure deprived the court of full information, we are satisfied that it did not fatally undermine the court's findings. Its *Gilbert* analysis was comprehensive and was not limited to the question of the residence of the primary witnesses. Rather, the court considered such additional important factors as the enforceability of relief and the primacy of Japan's interest in the litigation.

■ We necessarily must place heavy reliance on the discretion of the district court in balancing the *Gilbert* factors. *Alcoa, supra,* 654 F.2d at 158. Under the circumstances of the instant case, we hold that the court's decision to dismiss in light of the *Gilbert* factors was sufficiently justified.

**(B)** *Adequacy of the Alternative Forum*

Borden asserts that the court's application of the *Gilbert* factors was "misplaced" in the first instance because Meiji allegedly failed to meet, "at the outset", its burden of showing the availability of an adequate remedy in Japan. We reject this contention.

Borden's argument is hinged, precariously, on a footnote in the Supreme Court's decision in *Piper Aircraft, supra,* where the Court stated that:

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied."

454 U.S. at 254 n. 22 (citations omitted). We believe that Borden reads too much into this statement.

■ First, Borden's suggestion that the court erred in not considering the alternate forum "at the outset" and in shifting the burden to Borden borders on the frivolous. The district court squarely addressed the adequacy of Japan as a forum in its written opinion and clearly indicated that it was Meiji that bore the burden of demonstrating its adequacy. We do not read *Piper Aircraft* to require a rigidly formalistic

approach to forum non conveniens inquiries. Courts are required to consider whether an alternate forum exists. Whether they do so at the beginning, the middle, or the end of written opinions is not dispositive of the adequacy of their analyses. We believe that Borden's suggestion to the contrary is ludicrous.

■ Second, Borden claims that the district court failed to recognize the limited, emergency nature of the relief it was seeking, i.e. a preliminary injunction in aid of arbitration. Borden claims that there is no provision for such a remedy in Japan when the arbitration is pending outside Japan. Borden's implication that arbitration currently is pending in New York is itself disingenuous. In fact, a determination has not yet been made whether the underlying arbitration will be in New York or in Japan. Moreover, even if the arbitration were to proceed in the United States, the record relied upon by the court indicates a good possibility that a Japanese court would grant preliminary relief *even if the underlying arbitration were going forward in New York.* The court explicitly found that "there has been an adequate showing on Meiji's part that there is an alternative remedy available to Borden in the Japanese courts." This finding is adequately supported by the record.

■ Third, although Borden suggests that, in order for Japan to be considered an adequate forum, Japan must provide precisely the same remedies and in the same time-frame, this simply is not so. Rather, "some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Shields v. Mi Ryung Constr. Co.,* 508 F.Supp. 891, 895 (S.D.N.Y.1981); *see also Alcoa, supra,* 654 F.2d at 159, where we affirmed the district court's dismissal, ("the prospect of a lesser recovery does not justify refusing to dismiss on the ground of forum non conveniens").

■ We do agree with Borden, however, that its rights would be unduly prejudiced if it were forced to wait years or even months to have a Japanese court review its application for some measure of temporary relief. The district court ordered that Borden may move to restore this action if preliminary injunctions prove to be unavailable in Japan. In dismissing the action only conditionally, the court sought to protect Borden's rights. *Calavo Growers v. Belgium,* 632 F.2d 963, 968 (2 Cir.1980), *cert. denied,* 449 U.S. 1084 (1981). In order to provide a further measure of protection to Borden, we modify the district court's order so that Borden may reapply for a preliminary injunction in the Southern District of New York if the Japanese court does not decide Borden's application within 60 days after it is submitted. Meiji agreed to this modification of the district court's order at oral argument.

V.

To summarize:

We hold that we have subject matter jurisdiction in the instant case. New York procedural rules did not preclude dismissal of the action. The district court made adequate findings with respect to the existence of an alternate forum in Japan. It properly exercised its discretion by applying the *Gilbert* factors and conditionally dismissing on forum non conveniens grounds. We modify the court's dismissal order only insofar as it did not provide a time frame for a re-application for relief. We hold that Borden may return to the district court if Japan fails to act on its foreign application within 60 days. We have considered Borden's remaining arguments and find them to be without merit.

Affirmed as modified.