**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
June 25, 2019

Lyle W. Cayce
Clerk

No. 16-30984

STEMCOR USA INCORPORATED,

Plaintiff

v.

CIA SIDERURGICA DO PARA COSIPAR, ET AL.,

Defendants

----------------------------------------------

DAEWOO INTERNATIONAL CORPORATION,

Plaintiff - Appellant

v.

THYSSENKRUPP MANNEX GMBH,

Intervenor Plaintiff - Appellee

v.

AMERICA METALS TRADING L.L.P., ET AL.,

Defendants

Appeal from the United States District Court
for the Eastern District of Louisiana

No. 16-30984

ON PETITION FOR REHEARING

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

On second rehearing of this matter, we certified to the Louisiana Supreme Court the question of whether a suit seeking to compel arbitration is an "action for a money judgment" under Louisiana's non-resident attachment statute, La. Code Civ. Proc. art. 3542. *See Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 740 F. App'x 70 (5th Cir. 2018). The Louisiana Supreme Court having now provided its answer, we conclude that Louisiana's non-resident attachment statute allows for attachment in aid of arbitration. Thus, we grant rehearing, withdraw our prior opinion, 895 F.3d 375 (5th Cir. 2018), and substitute the following. We also VACATE the judgment of the district court and REMAND.

I

This is a dispute between two creditors, each of which attached the same pig iron owned by America Metals Trading L.L.P. ("AMT"). Plaintiff–Appellant Daewoo International Corp. ("Daewoo") is a South Korean trading company. In May 2012, Daewoo entered into a series of contracts with AMT for the purchase of pig iron, to be delivered in New Orleans. The sale contracts contained arbitration clauses. Although Daewoo made payments under the contracts, AMT never shipped the pig iron. Thyssenkrupp Mannex GMBH ("TKM") is a German company. Between June 2010 and February 2011, TKM entered into six contracts to purchase pig iron from AMT. AMT never delivered. In response to the breach of contract, TKM and AMT negotiated a settlement, which required AMT to make quarterly payments to TKM. AMT did not pay.

2

No. 16-30984

Daewoo sued AMT in the Eastern District of Louisiana, seeking an order compelling arbitration and an attachment of the pig iron on board a ship then-anchored in New Orleans. Daewoo invoked both maritime attachment and the Louisiana non-resident attachment statute, which allows attachments in aid of any "action for a money judgment." La. Code Civ. Proc. art. 3542. Citing both types of attachment, the district court granted Daewoo its attachment. Intervenor-Appellee TKM later attached the same pig iron in Louisiana state court and intervened in Daewoo's federal action arguing that maritime jurisdiction was improper and Louisiana's non-resident attachment statute was inapplicable.

The district court agreed with TKM and vacated Daewoo's attachment. *See Stemcor USA, Inc. v. Am. Metals Trading, LLP*, 199 F. Supp. 3d 1102 (E.D. La. 2016). Specifically, the district court found that because Daewoo's underlying suit sought to compel arbitration, it was not an "action for a money judgment." Thus, the district court found that Daewoo could not receive a non-resident attachment writ. After Daewoo's writ was dissolved, TKM's state court attachment became first in time and the district court transferred proceeds from the parties' agreed sale of the pig iron to state court. Daewoo appealed the district court's conclusion that its Louisiana non-resident attachment writ was invalid. This court heard oral arguments, rendered a decision and reconsidered this matter on rehearing. *See Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 870 F.3d 370 (5th Cir. 2017), *opinion withdrawn and superseded on reh'g*, 895 F.3d 375 (5th Cir. 2018).

On second rehearing of this matter, we certified to the Louisiana Supreme Court the question of whether a suit seeking to compel arbitration is an "action for a money judgment" under Louisiana's non-resident attachment statute, La. Code Civ. Proc. art. 3542. *See Stemcor USA Inc. v. Cia Siderurgica*

No. 16-30984

*do Para Cosipar*, 740 F. App'x 70 (5th Cir. 2018).  The Louisiana Supreme Court has now answered.  *See Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, --- So.3d ----, 2018-CQ-1728, 2019 WL 2041826, (La. May 8, 2019).

II

The district court found federal subject matter jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").  We agree.

For a federal court to have jurisdiction under the Convention, two requirements must be met: (1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement.  These requirements flow from the text of two sections of the Convention.  The explicit jurisdictional provision is Section 203, which gives federal courts jurisdiction over all "action[s] or proceeding[s] falling under the Convention."  9 U.S.C. § 203.  "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.  Accordingly, the first step for determining jurisdiction is deciding whether the "arbitration agreement or award . . . falls under the Convention."  *Id.*

The next step, derived from Section 203, is to ask whether the "action or proceeding"—as opposed to the arbitration agreement or award—falls under the Convention.  The Convention's removal statute offers guidance on what "falling under" means because "[g]enerally, the removal jurisdiction of the federal district courts extends to cases over which they have original jurisdiction."  *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 272 (5th Cir. 2002).  Section 205 of the Convention allows for removal whenever "the subject

matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention." 9 U.S.C. § 205. We have read "relates to" to mean "has some connection, has some relation, [or] has some reference" to. *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 378–79 (5th Cir. 2006). And reading "falling under" to mean "relates to" makes sense grammatically. "Fall" means "to come within the limits, scope, or jurisdiction of something." Merriam-Webster's Collegiate Dictionary 418 (10th ed. 2002). Accordingly, the second step of the jurisdictional question is asking whether the "action or proceeding" "relates to" a covered arbitration agreement or award. *See Fred Parks, Inc. v. Total Compagnie*, 981 F.2d 1255, 1992 WL 386999, at *1–2 (5th Cir. 1992) (unpublished) (treating the question of original and removal jurisdiction under the Convention as identical).

This two-step jurisdictional inquiry is consistent with case law interpreting the Convention. *See, e.g.*, *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481, 487 & n.4 (5th Cir. 2012) (finding jurisdiction where there was a covered arbitration agreement and the suit sought appointment of arbitrators); *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990) (holding that jurisdiction over preliminary injunction in aid of covered arbitration was proper because the remedy sought did not try to "bypass arbitration"); *Sunkyong Eng'g & Const. Co. v. Born, Inc.*, 149 F.3d 1174, 1998 WL 413537, at *5 (5th Cir. 1998) (unpublished) ("The FAA grants the United States district courts original federal question jurisdiction over arbitral awards and agreements to arbitrate that fall within the Convention."); *Venconsul N.V. v. Tim Int'l. N.V.*, 03Civ.5387(LTS)(MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) ("*Borden* has been interpreted as recognizing a court's power to entertain requests for provisional remedies in aid of arbitration even where the request for remedies does not accompany a motion to compel arbitration or

to confirm an award.").

Both jurisdictional requirements are met here. First, Daewoo's arbitration agreements with AMT are covered by the Convention. For an arbitration agreement to be covered by the Convention, four requirements must be met: (1) there must be an agreement in writing to arbitrate the dispute; (2) the agreement must provide for arbitration in the territory of a Convention signatory; (3) the agreement to arbitrate must arise out of a commercial legal relationship; and (4) at least one party to the agreement must not be an American citizen. *See Freudensprung v. Offshore Tech. Servs., Inc.,* 379 F.3d 327, 339 (5th Cir. 2004); *Sunkyong*, 149 F.3d 1174, 1998 WL 413537, at *5; *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex)*, 767 F.2d 1140, 1144–45 (5th Cir. 1985). All four requirements are met here:

- There is an agreement in writing to arbitrate Daewoo and AMT's dispute.
- That agreement provides for arbitration in New York, and the United States is a signatory to the Convention.
- The agreement arises out of a commercial relationship between Daewoo and AMT.
- Both Daewoo and AMT are not American citizens.

Second, this suit is related to the AMT arbitration agreements because Daewoo seeks an attachment to facilitate the arbitration provided for in the AMT agreements. *See Borden*, 919 F.2d at 826 ("[T]he desire for speedy decisions in arbitration is entirely consistent with a desire to make as effective as possible recovery upon awards, after they have been made, which is what provisional remedies do." (internal quotation marks and citation omitted)). Our decision in *E.A.S.T., Inc. of Stamford v. M/V Alaia*, 876 F.2d 1168 (5th Cir. 1989), strongly counsels towards recognizing subject matter jurisdiction based on the Convention to issue provisional remedies in aid of arbitration. The court in *E.A.S.T.*, albeit in the context of a maritime attachment, found

No. 16-30984

that the "the arrest of a vessel prior to arbitration is not inconsistent with the Convention." *Id.* at 1173. And the court noted that the Convention "does not expressly forbid pre-arbitration attachment" and that pre-arbitration attachment "may 'serve[] . . . as a security device in aid of arbitration.'" *Id.* (alteration in original) (quoting *Atlas Chartering Servs., Inc. v. World Trade Grp., Inc.*, 453 F. Supp. 861, 863 (S.D.N.Y. 1978)).

Indeed, *E.A.S.T.*'s reasoning mirrors the reasoning of courts that have found subject matter jurisdiction under the Convention to order state-law provisional remedies. Like the court in *E.A.S.T.*, those courts reason that "nothing in the Convention divests federal courts of jurisdiction to issue provisional remedies . . . such as an attachment, when appropriate in international arbitrations." *Bahrain Telecomms. Co. v. Discoverytel, Inc.*, 476 F. Supp. 2d 176, 181 (D. Conn. 2007); *see also China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Dig., Inc.*, 155 F. Supp. 2d 1174, 1180 (C.D. Cal. 2001) ("Rather than conflicting with the parties' agreement to arbitrate, provisional remedies such as attachment reinforce arbitration agreements by ensuring that assets from which an arbitration award would be satisfied are secured while arbitration is pending."). *E.A.S.T.* therefore strongly suggests that this court recognizes jurisdiction under the Convention to issue state-law preliminary remedies in aid of arbitration.[1]

---

[1] And there are compelling reasons against reading jurisdiction under Section 203 as narrowly limited to the three remedies expressly allowed by the Convention (compelling arbitration and appointing arbitrators in Section 206 and confirming awards in Section 207). Namely,

> [n]othing in § 206 or § 207 limits the subject matter jurisdiction of federal courts. These sections merely identify the remedies that federal courts may grant, and do not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts. . . . To grant the remedies provided in those sections, the Court must first determine that it has jurisdiction . . . .

No. 16-30984

Applying *E.A.S.T.* and the cases that follow it, the Convention grants jurisdiction over Daewoo's request for an attachment. Like the plaintiff in *E.A.S.T.*, Daewoo sought to attach the pig iron in order to facilitate arbitration and increase its chance of recovering on any award. Because Daewoo sought attachment to bring about a covered arbitration—that is, because Daewoo's suit related to a covered arbitration agreement—this court has subject matter jurisdiction.[2]

## III

The parties dispute whether Louisiana's non-resident attachment statute allows for attachment in aid of arbitration. The district court held that it does not.

As stated previously, we certified to the Louisiana Supreme Court the question of whether a suit seeking to compel arbitration is an "action for a money judgment" under Louisiana's non-resident attachment statute, La.

---

Treating §§ 206 and 207 as jurisdictional provisions confuses the subject matter jurisdiction of federal courts with their remedial authority. Although jurisdiction is a word of many . . . meanings, there is a difference between the two. The nature of the relief available after jurisdiction attaches is, of course, different from the question whether there is jurisdiction to adjudicate the controversy . . . . The breadth or narrowness of the relief which may be granted under federal law . . . is a distinct question from whether the court has jurisdiction over the parties and the subject matter. Any error in granting or designing relief does not go to the jurisdiction of the court.

*CRT Capital Grp. v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 374–75 (S.D.N.Y. 2014) (internal quotations marks, citations, and alterations omitted). Simply put, the question of what remedies are available in a Convention suit is distinct from the question of jurisdiction.

[2] We asked the parties to brief whether this court has personal jurisdiction under quasi in rem principles. We are satisfied that we have personal jurisdiction. *See Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 88–89 (1992); *Nassau Realty Co., Inc. v. Brown*, 332 So. 2d 206, 210 (La. 1976).

No. 16-30984

Code Civ. Proc. art. 3542. *See Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, 740 F. App'x 70 (5th Cir. 2018). The Louisiana Supreme Court accepted the certified question and answered: "Louisiana Code of Civil Procedure article 3542 allows for attachment in aid of arbitration if the origin of the underlying arbitration claim is one pursuing money damages and the arbitral party has satisfied the statutory requirements necessary to obtain a writ of attachment." *See Stemcor USA Inc. v. Cia Siderurgica do Para Cosipar*, --- So.3d ----, 2018-CQ-1728, 2019 WL 2041826, *1 (La. May 8, 2019).

Louisiana's attachment statute provides that "[a] writ of attachment may be obtained in any action for a money judgment, whether against a resident or a nonresident, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain amount, and whether it is liquidated or unliquidated." La. Code Civ. Proc. art. 3542. The underlying action seeking to compel arbitration here is clearly an "action for a money judgment" under Louisiana's non-resident attachment statute. See La. Code Civ. Proc. art. 3542. Daewoo has made it clear from the outset that it would be pursuing a money judgment. The "nature, character, or origin of the claim" just happens to be arbitration. La. Code Civ. Proc. art. 3542. Thus, we conclude that the district court erred in finding that the Louisiana non-resident attachment statute was not available to Daewoo.

IV

For the above reasons, we VACATE and REMAND.

9