FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JONES DAY, *Petitioner-Appellant*, <br><br> v. <br><br> ORRICK, HERRINGTON & SUTCLIFFE, LLP; MICHAEL D. TORPEY; MITCHELL ZUKLIE, *Respondents-Appellees*. | No. 21-16642 <br><br> D.C. No. 4:21-mc-80181-JST <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted February 10, 2022
San Francisco, California

Filed August 1, 2022

Before: Kim McLane Wardlaw, Sandra S. Ikuta, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Wardlaw

**SUMMARY**[*]

**Arbitration / Summonses**

The panel reversed the district court's order denying Jones Day's petitions to compel Orrick, Herrington & Sutcliffe, LLP, to comply with an arbitrator's subpoena requiring two Orrick partners to appear at a hearing in an international arbitration conducted pursuant to Chapter Two of the Federal Arbitration Act.

First, the panel held that the district court had subject matter jurisdiction over the action to enforce arbitral summonses issued by the arbitrator in an ongoing international arbitration being conducted in Washington, D.C., under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, known as the New York Convention. FAA Chapter Two's jurisdictional provision, 9 U.S.C. § 203, provides federal district courts with original jurisdiction over actions or proceedings falling under the New York Convention. Joining other circuits, the panel held that (1) if the underlying arbitration agreement or award falls under the New York Convention, and (2) the action or proceeding relates to that agreement or award, then the federal district court has jurisdiction over the action or proceeding.

The panel further held that venue was proper in the Northern District of California. Section 204 of the FAA provides that where the arbitration agreement designates a place of arbitration in the United States, an action or

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

proceeding may be brought in the district embracing the place of arbitration. However, where, as here, that federal district court lacks personal jurisdiction over the party against whom enforcement is sought, the action may be brought in any district court deemed appropriate under the general venue statute, 28 U.S.C. § 1391, because § 204 supplements, rather than supplants, other venue rules.

The panel reversed and remanded with instructions to enforce Jones Day's petitions to compel Orrick and its partners to comply with the arbitral summonses.

**COUNSEL**

Craig E. Stewart (argued), David C. Kiernan, and Paul C. Hines, Jones Day, San Francisco, California, for Petitioner-Appellant.

Sarah M. Harris (argued), Michael J. Mestitz, Benjamin W. Graham, and Aaron Z. Roper, Williams & Connolly LLP, Washington, D.C.; L. Christopher Vejnoska, Orrick Herrington & Sutcliffe LLP, San Francisco, California; for Respondents-Appellees.

**OPINION**

WARDLAW, Circuit Judge:

Congress enacted Chapter Two of the Federal Arbitration Act ("FAA"), *see* 9 U.S.C. §§ 201–208, to provide for the effective and efficient resolution of international arbitral disputes after the United States entered into the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, June 1958) ("the New York Convention" or "Convention"). This appeal arises from the denial of a petition to enforce a summons issued by an arbitrator conducting an international arbitration pursuant to Chapter Two of the FAA.

We first address subject matter jurisdiction. Unlike Chapter One of the FAA, which governs domestic arbitral disputes and does not include a jurisdictional provision, Chapter Two of the FAA includes a jurisdictional provision, 9 U.S.C. § 203, which provides federal district courts with original jurisdiction over "action[s] or proceeding[s] falling under the Convention." It is clear that the enforcement of an agreement to arbitrate or an arbitral award "fall[s] under the Convention," but we must decide whether an action to enforce an arbitral summons issued by the arbitrator in an ongoing international arbitration under the Convention also "falls under the Convention." We join our sister circuits in holding that (1) if the underlying arbitration agreement or award falls under the Convention, and (2) the action or proceeding relates to that agreement or award, then the federal district court has jurisdiction over the action or proceeding.

This conclusion raises the question of in which district court should the enforcement action be brought? Section 204 of the FAA provides that where the arbitration

agreement designates a "place of arbitration" in the United States, an action or proceeding may be brought in the district embracing the place of arbitration. However, where, as here, that federal district court lacks personal jurisdiction over the party against whom enforcement is sought, we hold that the action may be brought in any district court deemed appropriate under the general venue statute, 28 U.S.C. § 1391, because § 204 supplements, rather than supplants, other venue rules.

# I.

At the root of the ongoing international arbitration is a dispute between Jones Day and one of its former partners, a German national who was based in its Paris office, until he left to join Orrick, Herrington & Sutcliffe.[1]  Jones Day's partnership agreement provides for mandatory arbitration of all disputes among partners, and that all such arbitration proceedings are governed by the FAA. The partnership dispute proceeded to arbitration in Washington D.C., the location designated in the arbitration agreement.

Jones Day requested that the arbitrator issue a subpoena to Orrick for documents it deemed material to its claims against its former partner. The arbitrator issued a subpoena and summoned Orrick to appear before him to produce the specified documents. When Orrick failed to comply with the subpoena, Jones Day sought to enforce it in the Superior Court of the District of Columbia. That court dismissed Jones Day's petition, concluding that it lacked personal

---

[1] Because details of this underlying partnership dispute are irrelevant to the issues joined in this appeal, we have granted the parties' motions to seal portions of the briefs and record that relate to that dispute. To the extent this opinion references information from sealed documents, the information is unsealed for purposes of the disposition.

jurisdiction over Orrick, whose principal place of business is San Francisco, and that section 7 of the FAA "requires Jones Day to file its action to enforce an arbitral subpoena in a United States district court."

Jones Day then requested that the arbitrator sit for a hearing in the Northern District of California and issue a revised subpoena requiring two Orrick partners residing in the Northern District to appear at a hearing in San Jose, California. The arbitrator granted Jones Day's request and issued the arbitral summonses. Orrick refused to comply with those summonses, so Jones Day filed this action to enforce them in the District Court for the Northern District of California.

The district court denied Jones Day's petition, concluding that it lacked authority to compel compliance with the summonses under FAA § 7, which it construed as providing that the district where the arbitrator sits is the only district in which a district court may compel attendance. *See* 9 U.S.C. § 7. Reasoning that "it is undisputed that Washington D.C. is the seat of the underlying arbitration," the district court concluded it could not compel attendance at a hearing in San Jose, California. The district court rejected Jones Day's argument that an arbitrator can "sit" in more than one location, and that for purposes of the hearing in San Jose, the arbitrator would be sitting in the Northern District. Because it dismissed Jones Day's petition on venue grounds, the district court declined to decide whether Chapter Two of the FAA conferred subject matter jurisdiction over actions to enforce an arbitral summons to a third party.

## II.

We have jurisdiction under 28 U.S.C. § 1291. "We review questions of statutory construction and subject-matter jurisdiction de novo." *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021) (quoting *City of Oakland v. BP PLC*, 969 F.3d 895, 903 (9th Cir. 2020)). We also review the district court's denial for improper venue de novo. *California v. Azar*, 911 F.3d 558, 568 (9th Cir. 2018).

## III.

### A.

Although the district court declined to decide the issue, we first conclude that the district court had subject matter jurisdiction to enforce the arbitral summonses. Section 203 of the FAA provides federal district courts with original jurisdiction, without regard to the amount in controversy, over "[a]n action or proceeding falling under the Convention." 9 U.S.C. § 203. The parties do not dispute, and we hold, that the petitions to compel enforcement of arbitral summonses constitute "actions or proceedings" under the statute. Rather, they differ only as to whether such enforcement actions "fall under the Convention."

We begin with the text of the statute, here Chapter Two of the FAA, which governs arbitrations under the Convention. Section 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. It further provides that the federal district courts "shall have original jurisdiction over such an action or proceeding . . ." *Id*. There is no question that the arbitration agreement itself falls under the Convention. 9 U.S.C. § 202. Agreed, says Orrick, but neither the

Convention nor Chapter Two of the FAA expressly provides any tool to enforce arbitral summonses. Orrick contends that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards is narrowly limited to just that— the recognition and enforcement of completed arbitral awards. Moreover, it argues, actions or proceedings that "fall under" the Convention are limited to those set forth in Chapter Two of the FAA. That would confine § 203 jurisdiction to just three types of actions or proceedings: orders to compel arbitration, 9 U.S.C. § 206; appointments of arbitrators in accordance with an arbitration agreement, *id*.; or orders confirming an arbitral award, 9 U.S.C. § 207. Orrick reasons that because Congress "conspicuously" did not include a provision regarding petitions to enforce arbitral summonses, such a petition is not an action or a proceeding encompassed under § 203.

Orrick argues that to "fall under" means to be "listed or classified as" or "included in," citing Webster's New World Dictionary and the MacMillan Contemporary Dictionary. However, dictionaries from around 1970 (the year Congress enacted § 203, *see* Pub. L. 91-368 (July 31, 1970), 84 Stat. 692) embrace a broader definition of "fall under" than what Orrick asserts here. *See The Compact Edition of the Oxford English Dictionary Vol. I* 955 (1971) ("To be brought under the operation or scope of, be subjected to"); *Oxford Dictionary of Current Idiomatic English Vol. I* 102 (1975) ("be classified as, be placed within a certain category"). As these dictionaries demonstrate, the ordinary meaning of "fall under" does not support Orrick's contention that courts have jurisdiction under § 203 only if the action or proceeding is expressly listed or identified in the Convention.

In addition to the ordinary meaning of § 203's text, the structure of the Convention and Chapter Two of the FAA

supports the conclusion that actions or proceedings need not be explicitly listed in the Convention to "fall under" the Convention.  The Supreme Court has rejected the notion that the New York Convention must list every "judicial tool" for it to "fall under the Convention."  In *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020), the Court determined that the domestic doctrine of equitable estoppel, which permits the enforcement of arbitration agreements against nonsignatories, does not conflict with the Convention, and so is applicable in international arbitrations.  *Id*. at 1645 (citing 9 U.S.C. § 208, which provides that Chapter One applies to actions and proceedings brought under Chapter Two to the extent they do not conflict with Chapter Two or the Convention).

The Court began by examining the text of the New York Convention.  Arbitration agreements are discussed only in Article II of the Convention, and enforcement of arbitration agreements is limited to just a single provision, Article II(3), which states that "courts of a contracting state 'shall . . . refer the parties to arbitration' when the parties to an action entered into a written agreement to arbitrate and one of the parties requests referral to arbitration."  *Id*.  But the Court held that Article II(3) does not preclude application of the domestic doctrine of equitable estoppel because it "contains no exclusionary language; it does not state that arbitration agreements shall be enforced *only* in the identified circumstances."  *Id*. (emphasis in original).  The Court viewed a counter interpretation inappropriate because "the provisions of Article II contemplate the use of domestic doctrines to fill gaps in the Convention."  *Id*.  Thus, the Court did not "read the nonexclusive language of [Article II(3) of the Convention] to set a ceiling that tacitly precludes the use of domestic law to enforce arbitration agreements."  *Id*.

So too here.  Neither the Convention nor Chapter Two contains any language excluding the use of petitions to enforce arbitral summonses.  There is no language in either that limits the tools that may be utilized in international arbitrations in ways domestic arbitrations are not so limited. The only limitation is set forth in § 208, which as the Supreme Court noted in *GE Energy*, disallows only those processes provided for in domestic arbitrations under Chapter One that conflict with Chapter Two or the Convention.  9 U.S.C. § 208; *see also GE Energy*, 140 S. Ct. at 1644–45.  Far from conflicting with the Convention, judicial enforcement of an arbitrator's summons only aids in the arbitration process.  We therefore conclude that "Section 7 is a nonconflicting provision in Chapter 1 that residually applies through Chapter[] 2."  Restatement (Third) U.S. Law of Int'l Comm. Arb. § 3.4(e) (Am. Law Inst., Prop. Final Draft (April 24, 2019)) ("Restatement Prop. Final Draft") (citing 9 U.S.C. §§ 203 and 208); *see also* George A. Bermann et al., *A Model Federal Arbitration Summons to Testify and Present Documentary Evidence at an Arbitration Hearing*, 26 Am. Rev. Int'l Arb. 157, 172 (2015) (same). Orrick's argument that the only permissible judicial actions or proceedings are those explicitly listed in Chapter Two thus runs afoul of Chapter Two and the Convention's plain language, structure, and objectives.

As other courts have concluded, reading "falling under" more broadly to include proceedings necessary to complete the arbitration process for purposes of original jurisdiction is also supported by Chapter Two's delineation of the scope of district courts' removal jurisdiction.  Section 205 of the FAA provides that "[w]here the subject matter of an action or proceeding pending in a State court *relates to* an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial

thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205. If "falling under" in § 203 is not deemed at least co-extensive with "relates to" in § 205, then that would mean Congress intended the district courts to have a narrower scope of original jurisdiction than removal jurisdiction in enforcing international arbitration awards. Yet, the very purpose of the Convention and the Chapter Two implementing procedures is to encourage arbitration and to "authorize district courts to take actions necessary to ensure that the parties' underlying controversy is successfully resolved through arbitration." *Maine Cmty. Health Options v. Albertsons Cos., Inc.,* 993 F.3d 720, 725 (9th Cir. 2021) (Watford, J., concurring). The irony of Orrick's contrary position is that, in this very case where it asserts the Northern District of California lacks original jurisdiction, the same court would have had removal jurisdiction under FAA § 205 had Jones Day filed its petition to enforce the subpoena in San Francisco Superior Court. In that scenario, Orrick could have removed the enforcement action to the Northern District to *oppose* enforcement of the arbitral subpoena. This would be an absurd result, especially in light of congressional policy to enforce arbitration—not resist it—and the proceedings that further arbitration of international disputes. *See* 9 U.S.C. §§ 206, 207.

The Fifth Circuit engaged in a similar analysis in *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar,* 927 F.3d 906 (5th Cir. 2019), where the court determined it had § 203 jurisdiction over one party's action for an attachment related to an international arbitration covered by the New York Convention. The court reasoned that the meaning of § 203's term "falling under" must be guided by the removal statute, § 205, because "generally, the removal

jurisdiction of the federal district courts extends to cases over which they have original jurisdiction." *Id*. at 909 (cleaned up). The Fifth Circuit expressly rejected the argument Orrick makes here—that § 203 original jurisdiction is limited to actions compelling arbitration and appointing arbitrators under § 206 and confirming arbitration awards under § 207. *Id*. at 910 n.1.

Orrick argues that *Stemcor*'s reliance on § 205 removal jurisdiction is "based on a faulty assumption that removal jurisdiction and original jurisdiction share the same scope." Not so. *Stemcor* does not hold that removal jurisdiction is always coextensive with original jurisdiction, but more narrowly reasons that, in the context of Chapter Two, there is no reason to believe that Congress intended that original and removal jurisdiction would not be coextensive. *See id*. at 909. Thus, the Fifth Circuit in *Stemcor* considered the plain meaning of "relates to" in § 205 and falling under in § 203 and concluded that the terms share the same meaning for purposes of articulating the federal courts' original jurisdiction in § 203. It reasoned that "reading 'falling under' to mean 'relates to' makes sense grammatically," and cited the Merriam-Webster Collegiate Dictionary definition of "fall" as "to come within the limits, scope or jurisdiction of something." *Stemcor*, 927 F.3d at 909. The Fifth Circuit then held that a federal court has jurisdiction under the Convention if two requirements are met: "(1) there must be an arbitration agreement or award that falls under the Convention, and (2) the dispute must relate to that arbitration agreement." *Id*.

The Second and Eleventh Circuits agree with the Fifth Circuit's analysis. For example, in *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60 (2d. Cir. 2012), the Second Circuit concluded

that the district court had jurisdiction under § 203 "to vacate an arbitral award," an action not expressly authorized under Chapter Two. *Id*. at 64, 71; *see also Borden, Inc. v. Meiji Milk Prods. Co., Ltd.,* 919 F.2d 822, 826 (2d. Cir. 1990) (finding that subject matter jurisdiction exists over an application for a preliminary injunction in aid of arbitration because it is "consistent with [the Act's] provisions and its spirit").

The Eleventh Circuit also held it had subject matter jurisdiction under § 203 over a party's motion to vacate an arbitral award. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH,* 921 F.3d 1291, 1299 (11th Cir. 2019). Like Orrick here, INPROTSA argued that the New York Convention and Chapter Two expressly provided jurisdiction only over actions to compel arbitration and to confirm an award. *Id*. at 1298. The Eleventh Circuit rejected that assertion, reasoning that Chapter Two "is merely a statute by which the Convention has been implemented in this country." *Id*. at 1299. "The relevant inquiry under § 203 is not whether a particular action or proceeding is provided by the Convention Act; it is whether the 'action or proceeding fall[s] under the Convention' itself." *Id.* (citations omitted). Thus, the court explained "that the *Convention Act* appears to expressly recognize only two causes of action" does not resolve whether an action falls under the Convention. *Id*. (emphasis added). The court further stated that, even assuming the Convention did not expressly authorize vacatur proceedings, INPROTSA's argument failed because it was incorrect to "assume[] an action or proceeding cannot *fall under* a particular body of law unless the action or proceeding is *provided by* that body of law." *Id*. (emphasis in original). The court explained that in its view, "an action or proceeding 'fall[s] under the Convention,' for purposes of § 203, when it involves subject

matter that—at least in part—is subject to the Convention, such that the action or proceeding implicates interests the Convention seeks to protect." *Id*. at 1299–1300.  As a practical matter, "this will require that the case sufficiently relate to an agreement or award subject to the Convention." *Id.* at 1300.

Like the Fifth Circuit, the Eleventh Circuit's interpretation of § 203 was "reinforced" by its understanding of § 205.  "Section 205 demonstrates congressional intent to provide a federal forum for resolving issues implicating the Convention." *Id*.  "It would make little sense for Congress to specifically authorize removal of cases over which the federal courts would lack subject-matter jurisdiction . . . .  It makes far more sense to conclude Congress intended § 203 to be read consistently with § 205 as conferring subject-matter jurisdiction over actions or proceedings sufficiently related to agreements or awards subject to the Convention." *Id*.; *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 n.6 (2d. Cir. 2011) ("The Convention should be interpreted broadly to effectuate its recognition and enforcement purposes." (cleaned up)).

We agree with the Fifth and Eleventh Circuits' expansive reading of § 203, and we hold that a federal court has original jurisdiction over an action or proceeding if two requirements are met: (1) there is an underlying arbitration agreement or award that falls under the Convention, and (2) the action or proceeding relates to that arbitration agreement or award. *See Stemcor*, 927 F.3d at 909.  And, for purpose of the second requirement, we adopt the meaning of "relates to," which we previously defined for purposes of § 205, as whether the proceeding "could *conceivably* affect the outcome of the plaintiff's case," *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011)

(emphasis in original), citing another Fifth Circuit decision, *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).

Applying these jurisdictional requirements to the facts of this case is straightforward.  The underlying arbitration agreement between Jones Day, an international law firm residing for jurisdictional purposes in Washington D.C., and its former non-U.S. citizen partner falls under the Convention as defined by § 202.  The petition to compel Orrick's compliance with the arbitral summonses relates to the underlying arbitration agreement, as the arbitrator determined that evidence adduced from the participation may be material to resolving the dispute.

Not only are these proceedings "related to" an arbitration agreement falling under the Convention, petitions to enforce a summons issued by the arbitrator are *necessary* ancillary proceedings that ensure the proper functioning of the underlying arbitration.  As Judge Watford has explained, "[c]onsidering the structure of the FAA as a whole, it seems evident . . . that Congress envisioned a § 7 petition [to enforce an arbitral summons to a third party] not as a freestanding lawsuit, but as an adjunct to the 'underlying substantive controversy' between the parties in arbitration." *Maine Cmty. Health Options*, 993 F.3d at 725 (Watford, J., concurring) (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).**[2]**  "[T]he enforcement of a subpoena brings

---

**[2]** 9 U.S.C. § 7 provides for arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case," and that "if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person."  Thus, unlike Chapter Two,

before the court one aspect of enforcing the parties' agreement to arbitrate—not the right to arbitrate itself, but the enjoyment of a key procedural attribute of the arbitration the parties bargained for."  Bermann, 26 Am. Rev. Int'l Arb. at 173.

This view of what "fall[s] under" the Convention is consistent with the contemplation of the signatories to the agreement.  The New York Convention has been adopted by nearly 200 nations worldwide because of the expanding role arbitration plays in resolving international commercial disputes.  The purpose of the Convention is twofold: (1) to ensure that countries recognize and enforce arbitration agreements, and (2) to ensure that countries recognize and enforce foreign arbitral awards.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).  By signing on to the Convention and adopting Chapter Two of the FAA, "the United States sought 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'"  *Castro v. Tri Marine Fish Co.*, 921 F.3d 766, 773 (9th Cir. 2019) (quoting *Scherk*, 417 U.S. at 520 n.15).  Recognizing and enforcing arbitration agreements includes facilitating the arbitration process and providing arbitrators—in both domestic and international arbitrations—with access to the ancillary actions and proceedings necessary to arrive at an arbitration

Chapter One of the FAA does list petitions to compel arbitral summons as an "action or proceeding."  Chapter One, however, "bestow[s] no federal jurisdiction but rather requires an independent jurisdictional basis."  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (internal quotations omitted).

award.    This includes arbitral subpoenas and their enforcement.

Thus, under 9 U.S.C. § 203, the district court had subject matter jurisdiction to enforce the petitions to comply with the arbitral summonses.[3]

### B.

Section 204 of the FAA provides a specific venue provision for actions or proceedings authorized by § 203. Such actions or proceedings "may be brought in any such [district] court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States."  9 U.S.C. § 204.  Jones Day asserts that § 204 is a non-exclusive venue provision that supplements, rather than supplants, other venue rules.  We agree.

We "refuse to nullify general venue laws, even in the face of apparently more narrow venue provisions in specific federal statutes."  *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir. 1989).    The general federal venue statute, 28 U.S.C. § 1391, "shall govern the venue of all civil actions brought in district courts of the United States."  It lists the judicial districts where "[a] civil action may be brought," § 1391(b), and applies "[e]xcept as otherwise provided by law," § 1391(a).  Section 1391 "ensures that so long as a federal court has personal jurisdiction over the

---

[3] Because we answer the jurisdictional question on this ground, we do not reach Jones Day's alternative proffered bases for jurisdiction, 9 U.S.C. §§ 206 and 208.

defendant, venue will always lie somewhere." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 57 (2013). "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." *Id.* (internal quotation marks and citation omitted). Only where there is evidence "that Congress intended the specific venue provision to be exclusive or . . . restrictively applied" will parties be deprived of relying on the general venue statute. *Go-Video, Inc.*, 885 F.2d at 1409; *see also Pure Oil Co. v. Suarez*, 384 U.S. 202, 205–07 (1966) (same).

Nothing in the text of § 204 indicates that Congress intended the FAA venue provision to be exclusive or restrictively applied. Section 204 is the only provision addressing venue in Chapter Two, and it is silent as to 28 U.S.C. § 1391. Section 204 uses the permissive "may be brought" to describe the additional authorized venues. "The word 'may,' when used in a statute, usually implies some degree of discretion." *United States v. Rodgers*, 461 U.S. 677, 706 (1983) (citation omitted). Orrick would have us read "may" as signaling "must," but Congress did not use any such mandatory language in drafting the statute.

Case law interpreting venue provisions in Chapter One of the FAA also informs our reading of § 204. In *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000), the Supreme Court addressed the question whether the venue provisions in 9 U.S.C. § 9 (actions to confirm an arbitration award), § 10 (actions to vacate an arbitration award), and § 11 (actions to modify an arbitration award) are restrictive, requiring such actions to be brought in only the district where the award was made, or are permissive, "permitting such a motion either where the award was made or in any district proper under the general venue statute." *Id.*

at 204.  Reasoning that the FAA was enacted at a time when the general venue statute was restrictive, allowing a civil action only where the defendant resided, the Court concluded that the venue provisions added to that location, rendering them permissive.  *See id*. at 199–200.  The Court found that "[t]he enactment of the special venue provisions in the FAA thus had an obviously liberalizing effect, undiminished by any suggestion, textual or otherwise, that Congress meant simultaneously to foreclose a suit where the defendant resided."  *Id*. at 200.  The Court recognized that "[t]he most convenient forum for a defendant is normally the forum of residence, and it would take a very powerful reason ever to suggest that Congress would have meant to eliminate that venue for postarbitration disputes."  *Id*.  The Court instead held that "the permissive view of FAA venue provisions [is] entitled to prevail."  *Id*. at 204.

We expanded on this decision in *Textile Unlimited, Inc. v. A..BMH & Co., Inc.*, 240 F.3d 781 (9th Cir. 2001), in which we held that the FAA venue provision in 9 U.S.C. § 4, governing actions to compel arbitration, is likewise permissive rather than exclusive.  We concluded based on the Court's reasoning in *Cortez Byrd* that all of the FAA's venue provisions "do not supplant the general venue provisions of 28 U.S.C. § 1391(a); rather, they are permissive and supplement those sections."  *Id*. at 784.  We understood *Cortez Byrd* to instruct us to "weave the various venue strands of the Act together into a seamless fabric which does not clash with other federal venue statutes."  *Id*. (citing *Cortez Byrd*, 529 U.S. at 199–200).  "Such an analysis can only lead to a more elastic and complimentary construction of venues available under the FAA, including those founded on 28 U.S.C. § 1391 alone."  *Id*.

The district court's analysis was focused on the specific venue provision set forth in 9 U.S.C. § 7, the Chapter One provision that governs petitions to compel compliance with an arbitrator's summons filed in district court.  Section 7 provides for enforcement of an arbitral summons in the "district in which such arbitrators, or a majority of them, are sitting."  The court reasoned that because it is undisputed that Washington D.C. is the "seat of the underlying arbitration," it lacked jurisdiction to enforce the summons. But the district court did not consider the specific venue provision applicable here, 9 U.S.C. § 204, nor did it consider whether that provision was exclusive or permissive.[4]

Orrick points to § 201, which provides that the "Convention . . . shall be enforced in the United States courts in accordance with this chapter."  9 U.S.C. § 201.  Congress' use of "shall" here, Orrick argues, mandates the use of Chapter Two's provisions in any proceedings under the chapter, including the specific venue provision in § 204.  To support this argument, Orrick cites *Johnson v. Payless Drug Stores Nw., Inc.*, 950 F.2d 586 (9th Cir. 1991), where we held in the Title VII context that the later-enacted specific venue provision in 42 U.S.C. § 2000e-5(f) governed over the general venue statute.   Title VII, however, expressly provided that the venue "provisions of section 2000e-5(f) . . . shall govern" employment discrimination actions.  42 U.S.C. § 2000e-16(d).  And, we held, that language "is mandatory." *Johnson*, 950 F.2d at 587 (citation omitted).

---

[4] Because we hold that 9 U.S.C. § 204 is a non-exclusive venue provision that supplements, rather than supplants, other venue rules (including 28 U.S.C. § 1391), we need not resolve the parties' dispute as to whether 9 U.S.C. § 7 provides for venue (or where).

Unlike in Title VII, the language in 9 U.S.C. § 204, which provides for venue here, is not mandatory.  Rather, § 204 is a permissive, supplemental venue provision in addition to the general venue provision, 28 U.S.C. § 1391. Neither party argues that the Northern District of California is an improper venue under § 1391.  Under § 1391, the Northern District of California is a proper venue because it is Orrick's principal place of business.  Therefore, it was error to dismiss the petitions on venue grounds.  Because the district court had subject matter jurisdiction and no other challenges were raised to the petitions, the district court should have granted Jones Day's petitions to enforce the summonses.

## IV.

For these reasons, we reverse and remand with instructions to enforce Jones Day's petitions to compel Orrick and its partners to comply with the arbitral summonses.

**REVERSED AND REMANDED.**